UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAYAL PATEL,

          Plaintiff,

    v.

NIKE RETAIL SERVICES, INC.,

          Defendant.

Case No.  14-cv-00851-JST

**ORDER GRANTING MOTION TO REMAND**

Re: ECF No. 12

## I.     INTRODUCTION

Defendant Nike Retail Services, Inc. removed this action from the Alameda County Superior Court on diversity jurisdiction grounds.  ECF No. 1.  Plaintiff Payal Patel now moves to remand it.  ECF No. 12.  At issue is whether the federal "amount in controversy" requirement has been satisfied.  The matter came for hearing on May 8, 2014.

The Court will grant the motion.

## II.    BACKGROUND

### A.     Procedural and Factual History

Plaintiff alleges that she was employed by Defendant as an Assistant Store Manager from November 2010 to August 2013.  Complaint ¶ 4 (Exh. A to Notice of Removal, ECF No. 1).  In November 2013, she brought an action against her former employer, asserting claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*., failure to pay overtime compensation in violation of Cal. Labor §§ 510, 1194 & 1198, failure to provide accurate wage statements in violation of Cal. Labor Code § 226, failure to make timely wage payments in violation of California Labor Code §§ 201-03, and a cause of action pursuant to California Private Attorney General Act ("PAGA"), Cal Lab. Code § 2698, *et seq.*

Defendant removed to this Court, asserting diversity jurisdiction over this action.  Plaintiff

now moves to remand.

### B.    Legal Standard

"[A]ny civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by a defendant ... to [a] federal district court." 28 U.S.C. § 1441(a).  "A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing 28 U.S.C. § 1441).

To invoke federal diversity jurisdiction under 28 U.S.C. § 1332(a), a matter must 'exceed[] the sum or value of $75,000.'"  Urbino v. Orkin Servs. of California, Inc., 726 F.3d 1118, 1121 (9th Cir. 2013).  If the district court determines that it lacks jurisdiction, the action should be remanded back to the state court.  Martin v. Franklin Capital Corp., 546 U.S. 132, 134 (2005). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992).  The court "resolves all ambiguity in favor of remand." Hunter, 582 F.3d at 1042.[1]

## III.    ANALYSIS

Defendant asserts, and Plaintiff does not deny, that Defendant is a citizen only of Oregon and that Plaintiff is a citizen of California.  Notice of Removal, ¶¶ 6-12.  However, Plaintiff disputes whether Defendant has established that at least $75,000 is in controversy.

Plaintiff does not specify what damages she is entitled to for each specific cause of action she brings.  She alleges overall that "[t]he amount in controversy for the PLAINTIFF individually does not exceed the sum or value of $75,000."  Complaint ¶ 24.  However, under California law, a plaintiff is not limited to the amount set forth in his or her complaint.  Damele v. Mack Trucks, Inc., 219 Cal. App. 3d 29, 41-42 (1990).

In the Notice of Removal, Defendant calculates the amount Plaintiff is seeking for meal and rest period penalties as at least $38,464.80 and the amount Plaintiff is seeking for untimely wages as at least $6,962.40.  Plaintiff does not dispute these amounts, and the court agrees that

---

[1] Other aspects of the applicable legal standard are disputed by the parties and are discussed more fully *infra*.

United States District Court
Northern District of California

they are appropriate.  But Plaintiff does dispute Defendant's argument that Plaintiff's other claims place at least $29,572.80 in controversy.

To resolve this dispute, the Court first discusses the applicable standard of proof, <u>see</u> Part III-A, *infra*. and then considers whether Plaintiff is legally required to seek less than $75,000, <u>see</u> Part III-B, *infra.*  With those issues out of the way, determining the amount in controversy requires the Court to answer three questions:

1.   How to determine the amount the proper amount Plaintiff has put in controversy with her allegation that she was "regularly" required to work uncompensated overtime, and for the amount she may elect to recover for the enhanced penalties available for "subsequent," knowing, Labor Code violations.  <u>See</u> III-C, *infra.*

2.   Whether the amount in controversy for a PAGA cause of action is the total amount of penalties attributable to an individual plaintiff, or whether the amount in controversy should be reduced by 75% to reflect the fact that 75% of PAGA penalties are paid to California's Labor & Workforce Development Agency rather than the individual plaintiff.  <u>See</u> III-D, *infra.*

3.   What amount of attorney's fees should be attributed to the amount in controversy.  <u>See</u> III-E, *infra*.

Surprisingly, none of these questions have well-established answers.

**A.      Standard of Proof**

To begin with, the Court must address the proper standard of proof for establishing the amount in controversy.  Relying primarily upon a CAFA case, <u>Lowdermilk v. U.S. Bank Nat'l Ass'n</u>, 479 F.3d 994, 999 (9th Cir. 2007), Plaintiff argues that the amount in controversy must be proven to a "legal certainty."  <u>Lowdermilk</u> acknowledged that the "preponderance of the evidence" standard applies "when the plaintiff fails to plead a specific amount of damages."  <u>Id.</u> at 998.  But "[w]here the plaintiff has alleged her facts and pled her damages, and there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction."  <u>Id.</u> at 999 (<u>citing</u> <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S.. 293, 290 (1938)).  "We think that the familiar

1    'legal certainty' standard best captures the proof the defendant must produce." <u>Lowdermilk</u>, 479

2    F.3d at 999.

3         The Ninth Circuit recently held "that <u>Lowdermilk</u> has been effectively overruled [by

4    <u>Standard Fire Ins. Co. v. Knowles</u>, __ U.S. __, 133 S.Ct. 1345 (2013)], and that the proper burden

5    of proof imposed upon a defendant to establish the amount in controversy is the preponderance of

6    the evidence standard." <u>Rodriguez v. AT & T Mobility Servs. LLC</u>, 728 F.3d 975, 977 (9th Cir.

7    2013).  Upon close review, however, this overruling appears to be limited to the specific situation

8    presented in those cases: class actions removed pursuant to CAFA.

9         More importantly, however, the answer to this question is now a matter of statute.  In

10   2011, Congress amended the federal removal statute to specify that, where the underlying state

11   practice "permits recovery of damages in excess of the amount demanded . . . removal of the

12   action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by

13   *the preponderance of the evidence*, that the amount in controversy exceeds the amount specified in

14   section 1332(a)."  Pub. L. 112-63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (<u>codified at</u> 28

15   U.S.C. §1446(c)(2) (emphasis added)).  The legislative history indicates that Congress acted to

16   eliminate the "legal certainty" standard that courts previously applied in situations when state law

17   permits recovery in excess of the amount demanded in the complaint:

18
19            Proposed new paragraph 1446(c)(2) allows a defendant to assert an
              amount in controversy in the notice of removal if the initial pleading
20            seeks non-monetary relief or a money judgment, in instances where
              the state practice either does not permit demand for a specific sum
21            or permits recovery of damages in excess of the amount demanded.
              The removal will succeed if the district court finds by a
22            preponderance of the evidence that the amount in controversy
              exceeds the amount specified in 28 U.S.C. s 1332(a), presently
23            $75,000.

24            [. . .]

25            In adopting the preponderance standard, new paragraph 1446(c)(2)
              would follow the lead of recent cases. <u>See</u> <u>McPhail v. Deere & Co.</u>,
26            529 F.3d 947 (10th Cir. 2008); <u>Meridian Security Ins. Co. v.
              Sadowski</u>, 441 F.3d 536 (7th Cir. 2006). As those cases recognize,
27            defendants do not need to prove to a legal certainty that the amount
              in controversy requirement has been met. Rather, defendants may
28            simply allege or assert that the jurisdictional threshold has been met.

United States District Court
Northern District of California

4

> Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies. If the defendant establishes by a preponderance of the evidence that the amount exceeds $75,000, the defendant, as proponent of Federal jurisdiction, will have met the burden of establishing jurisdictional facts.

H.R. REP. 112-10, 15-16, 2011 U.S.C.C.A.N. 576, 580; see also Wright & Miller, 14AA Fed. Prac. & Proc. Juris. § 3702.1 (4th ed.) ("in many situations the notice of removal will assert . . . that state law permits recovery in excess of the *ad damnum*. Removal will be proper under Section 1446(c)(2)(B) if the district court finds by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum").

As shall become clear in the discussion *infra*, a significant dispute remains between the parties about how the preponderance of the evidence standard applies to Plaintiff's complaint.  But after the 2011 amendment of the removal statute, preponderance of the evidence, rather than "legal certainty," is the standard for determining whether the amount in controversy is satisfied when state law permits the plaintiff to recover in excess of the amount alleged in the complaint.

**B.      Is Plaintiff Legally Bound to Seeking Less Than $75,000?**

"[F]ederal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement." Standard Fire, 133 S. Ct. at 1350 (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 294 (1938)).  After Standard Fire, a class representative cannot stipulate on behalf of absent class members to avoid CAFA's $5 million aggregate matter in controversy.  But while the instant case is a proposed class action, Defendant has not argued that it is removable pursuant to CAFA.  The sole basis of removal is "traditional" diversity jurisdiction, and the applicable amount in controversy is $75,000.  As to *that* amount, Plaintiff is free to stipulate on her *own* behalf not to seek $75,000 for herself (and to stipulate that her attorneys will not seek any amount of attorney's fees attributable to her claim that would bring the amount in controversy to $75,000).  "[A] federal court . . . can insist on a binding affidavit or stipulation that the plaintiff will continue to claim less than the jurisdictional amount as a pre-condition for remanding the case to state court."  Wright & Miller,

United States District Court
Northern District of California

5

1   14A Fed. Prac. & Proc. Juris. § 3702.1 (4th ed.).

2       "Some courts have required that these affidavits or stipulations be executed prior to the

3   notice of removal as a sign of their bona fides and cannot await the motion to remand." Id.

4   "[T]hough . . . the plaintiff after removal, by stipulation, by affidavit, or by amendment of his

5   pleadings, reduces the claim below the requisite amount, this does not deprive the district court of

6   jurisdiction." St. Paul, 303 U.S. at 292; see also Hill v. Blind Indus. & Servs., 179 F.3d 754, 757

7   (9th Cir. 1999) ("diversity jurisdiction is determined at the time the action commences, and a

8   federal court is not divested of jurisdiction . . . if the amount in controversy subsequently drops

9   below the minimum jurisdictional level"). It does not appear that any such binding stipulation was

10  attached to Plaintiff's state-court complaint.

11      Notwithstanding this, district courts within this circuit have remanded actions on the

12  condition that a plaintiff stipulate to seeking less than the jurisdictional minimum or submitting an

13  affidavit binding him or her not to accept any amount meeting the jurisdictional minimum. See,

14  e.g., Sherman v. Nationwide Mut. Ins. Co., No. 12-cv-152-M-DLC-JCL, 2013 WL 550265 (D.

15  Mont. Jan. 15, 2013) report and recommendation adopted, No. 12-cv-152-M-DLC-JCL, 2013 WL

16  550659, at *2 (D. Mont. Feb. 12, 2013) ("Based upon the Shermans' affidavit, the Court finds by a

17  preponderance of the evidence presented that the amount in controversy does not exceed the

18  requisite jurisdictional amount of $75,000"); see also Cicero v. Target Corp., No. 2:13-CV-619

19  JCM (GWF), 2013 WL 3270559, at *2 (D.Nev. June 26, 2013) ("[B]ased on plaintiff's arguments

20  in her motion to remand that her damages are limited to $74,999.99, plaintiff is judicially estopped

21  from arguing for more than $75,000 in damages").[2]

22      "The amount in controversy is simply an estimate of the total amount in dispute, not a

23  prospective assessment of defendant's liability." Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395,

24

25  _____

26  [2] This practice is in some tension with the Supreme Court's holding in St. Paul, 303 U.S at 292.
    But the precedents are reconcilable. In St. Paul, "the complaint disclosed an amount in

27  controversy requisite to the federal court's jurisdiction." 303 U.S. at 284. It was only after
    remand that plaintiff tried to seek a lesser amount. At the time of removal, the amount in

28  controversy was satisfied.

United States District Court
Northern District of California

400 (9th Cir. 2010).  The question is whether it is more likely than not Plaintiff *can recover* $75,000 if successful on all of her claims.  A legally binding commitment by Plaintiff *not* to recover that amount is the best possible evidence on that question.

At oral argument, the Court asked Plaintiff's counsel if Plaintiff would stipulate to seek no more than $75,000, inclusive of attorney's fees attributable to her claim alone.  Plaintiff's counsel declined, and in the two months since the matter has been under submission, no stipulation has been submitted to this Court.

A refusal to stipulate to receive less than $75,000 certainly does not conclusively establish that the amount of controversy is met.  Conrad Associates v. Hartford Acc. & Indem. Co., 994 F. Supp. 1196, 1199 (N.D. Cal. 1998).  But a stipulation *could* conclusively establish that the amount is *not* met.  Plaintiff's counsel has declined to take that route, preferring instead to maintain the legal ability to recover more than $75,000 in this action.  Therefore, the Court must resolve the question of the amount in controversy for itself.

### C.     Overtime and Subsequent Violations

The parties dispute how much is in controversy regarding two of Plaintiff's substantive claims: Plaintiff's allegation that she was "regularly" required to work uncompensated overtime hours, and her allegation that she could be entitled to recover the enhanced PAGA penalties that apply to "subsequent" PAGA violations.

#### 1.     Overtime

As her second cause of action, Plaintiff alleges that Defendant failed to pay her overtime compensation in violation of California Labor Code §§ 510, 1194 & 1198.  Complaint, ¶¶ 64-88. Plaintiff does not allege precisely how often this occurred, or how much she is seeking in damages for this violation.  But she does allege that "at all relevant times," she was "regularly required to work, and did in fact work, overtime hours."  Complaint, ¶¶ 49, 77.

In its notice of removal, Defendant construes this as an allegation that Plaintiff was made to work between 1-5 hours of overtime a week.  Notice of Removal, ¶¶ 20- 24.  On the basis of a declaration from a Nike employee about Plaintiff's scheduled working hours, Defendant calculates an amount in controversy between $5,769.69 (if Plaintiff is alleging 1 hour a week of unpaid

United States District Court
Northern District of California

7

overtime) and $28,848.45 (5 hours a week).  Id.

In her motion to remand, Plaintiff does not dispute the accuracy of Defendant's calculations.  Nor does she aver what amount should properly be considered to be in controversy for her second cause of action.  And she certainly does not disclaim that she is seeking to recover the amount Defendant identifies.  Instead, she asks this Court to attribute *no* amount in controversy for this cause of action, since Defendant "provided no facts establishing the calculation of overtime at one hour a week."  Mem. Pts. & Auth. In Support of Motion to Remand 5:6-9, ECF No. 12-1.  "The word 'regularly' could be construed to mean once a week, but there is no evidence proving whether the overtime was one (1) hour a week or thirty (30) minutes a week or even something less."  Id.  In other words, Plaintiff faults Defendant for failing to prove what Plaintiff means by the term "regularly," and for failing to prove the truth of Plaintiff's allegations.  As another court of this district put it, this is a "have . . . [your] cake and eat it too" argument, Navarro v. Servisair, LLC, No. 08-cv-02716-MHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008), and it is not persuasive.

"Not surprisingly, the federal courts have had some difficulty in ascertaining the amount in controversy when the [plaintiff's state-court] complaint is silent or inconclusive on the subject."  Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3725.1 (4th ed.).[3]  Courts must tread carefully when applying the phrase "preponderance of the evidence" to the "amount in controversy" inquiry.  Usually, "preponderance of the evidence" is a phrase used for determining whether a factual allegation is, in fact, true.  But a defendant is not required to admit, and is certainly not required to *prove*, the truth of plaintiff's assertions before invoking diversity jurisdiction.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  Lewis, 627 F.3d at 400; see also McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008) (cited approvingly in Lewis) ("[t]he amount in controversy is not proof of the amount the plaintiff will recover.  Rather, it is an estimate of the amount that will

_____

[3] While Plaintiff's state-court complaint alleges that she seeks less than $75,000, it is still legally "inconclusive" on this point since California law permits her to recover in excess of the amount she alleges.

United States District Court
Northern District of California

be put at issue in the course of the litigation").

The question at this stage of the litigation is not how many overtime hours Plaintiff *actually* worked, but how many hours Plaintiff *alleges* that she did.  Plaintiff is in a much better position to know this information than Defendant.

Defendant argues that "once Nike sets forth a *prima facie* case establishing jurisdiction, the onus shifts to Plaintiff to offer some kind of proof that jurisdiction is lacking."  Defendant's Opposition to Plaintiff's Motion to Remand ("Opp.") 4:25-26, ECF No. 13 (citing Lewis, 627 F.3d at 400-01; McPhail, 529 F.3d at 298-99; Strawn v. AT&T Mobility LLC, 530 F.3d 293, 298-99 (4th Cir. 2008); Univ. of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200, 1213 (1st Cir. 1993); Ohio Nat'l Life Ins. Co. v. U.S., 922 F.2d 320, 327, n. 7 (6th Cir. 1990)).  That somewhat overstates those cases' holdings, but the general concept is acknowledged in this circuit's case law.

In Lewis, plaintiff Delores Lewis brought a class action alleging that Verizon had billed her and other customers for "unauthorized" services they had not ordered.  627 F.3d at 397.  Verizon removed, providing a declaration proving that the proposed class members were billed more than $5 million for the challenged Verizon services during the relevant period, meeting the amount in controversy requirement under CAFA.  Id. at 398.  Lewis opposed removal, arguing that Verizon had failed to prove that all of those charges were actually "unauthorized."  Id.  The Ninth Circuit rejected this argument: "Plaintiff has alleged that the putative class has been billed for unauthorized charges; the Defendant has put in evidence of the total billings and the Plaintiff has not attempted to demonstrate, or even argue, that the claimed damages are less than the total billed."  Id. at 400.[4]

_____

[4] There are some contrary indications in Lewis.  For example, the court held that the Ninth Circuit's law "expressly contemplate[s] the district court's consideration of some evidentiary record."  627 F.3d at 400.  But this presumably means only that there must be a solid evidentiary basis for estimating the monetary value of Plaintiff's claims.  Lewis does not state that the district court must contemplate an evidentiary record establishing the truth of Plaintiff's allegations; in fact, it indicates the opposite.  Lewis also seemed to partly rest its conclusion on the fact that Verizon "has conceded that where proposed class members have been billed for services they did not order, they are entitled to a refund. "  Id.  But presumably, Nike also concedes that where workers entitled to overtime pay were denied it, they are entitled to damages.  Finally, this Court

United States District Court
Northern District of California

United States District Court
Northern District of California

To the extent Lewis is not directly controlling, this Court is also persuaded by other courts of this district that when facing an allegation like the one in this case, if a defendant prepares a well-founded evidentiary record, a defendant's reasonable extrapolations from the plaintiff's allegations suffice to establish the amount in controversy, if unrebutted by the plaintiff.  In facing a similar wage-and-hour violation, the Navarro court held:

> In light of these numbers, this court is convinced that the amount in controversy requirement is met. Although plaintiff claims defendant simply invents numbers in order to meet the amount in controversy requirement, he offers no alternative. For instance, he claims that defendant's calculations take into account three meal period violations per week without arguing that the same is untrue. He does not limit his claim by stating that only a certain number of hours went uncompensated. Nevertheless, he seeks remand. Plaintiff cannot have his cake and eat it too.

2008 WL 3842984, at *9.  More recently, another court of this district held similarly, addressing a similar allegation that a plaintiff was "regularly" made to work overtime:

> Plaintiff argues that the revised calculations are inflated because they assume, as one example, that plaintiff worked 13 hours a day every day that plaintiff worked for Godiva. However, as defendant notes, these calculations are consistent with plaintiff's allegation that during the relevant time period, he "regularly and/or consistently worked in excess of 12 hours per day." Compl. ¶ 50. While defendant's use of a 13 hour day is perhaps not conservative, defendant's calculations do not assume—as they could consistent with plaintiff's allegations—that he worked seven days in a row and thus would be entitled to even additional overtime. Plaintiff also argues that defendant's calculations are flawed because they are based on estimates of hours worked, and that defendant should have based its calculations based on the information in defendant's records. However, 'a removing defendant is not obligated to "research, state, and prove the plaintiff's claims for damages."' Korn v. Polo Ralph Lauren Corp., 536 F.Supp.2d 1199, 1204-05

---

acknowledges that it cannot fully reconcile the Lewis approach with the approach apparently taken by the Ninth Circuit in Garibay v. Archstone Communities LLC, 539 F. App'x 763 (9th Cir. 2013) (unpublished).  The claims in Garibay are more similar to the case at bar than the claims at issue in Lewis.  And in Garibay, the Ninth Circuit appeared to endorse the principle that a removing defendant is required to provide evidence of how many hours the employees *actually* worked - effectively proving the truth of Plaintiff's allegations rather than the monetary value of what Plaintiff alleges.  See also Garibray v. Archstone Communities LLC, No. 12-cv-10640-PA (VBKx) (C.D.Cal. Feb. 4, 2013).  This is very difficult to square with the notion that "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  Lewis, 627 F.3d at 400.  Faced with this potential conflict, this Court accepts the Ninth Circuit's published opinion as the superior authority.

United States District Court
Northern District of California

1     (E.D.Cal.2008) (quoting McCraw v. Lyons, 863 F.Supp. 430, 434
      (W.D.Ky.1994).

2   Lippold v. Godiva Chocolatier, Inc., No. 10-cv-00421 SI, 2010 WL 1526441, at *3 (N.D. Cal.

3   Apr. 15, 2010).

4          Defendant cited both Navarro and Lippold in its opposition to this motion.  In response,

5   Plaintiff argues that "all those cases found the removal burden satisfied by evidence that is not

6   present in this case, including deposition and declarant testimony regarding hours actually

7   worked."  Reply 3:7-9.  Neither Navarro nor Lippold discussed any deposition or declarant

8   testimony regarding the hours the plaintiffs actually worked.  And, as described *supra*, the number

9   of hours actually worked is not the relevant inquiry at this stage of the litigation.

10         Plaintiff alleges that she was regularly required to work overtime, and seeks damages for

11  having been made to do so.  Defendant has put forward a very reasonable estimate of how much a

12  "regular" overtime violation would place in controversy, grounded in specific facts regarding

13  Plaintiff's work schedule and salary.  In the face of this, Plaintiff cannot simply sit silent and take

14  refuge in the fact that it is Defendant's burden to establish the grounds for federal jurisdiction.

15  This is especially the case since the knowledge in question – how often Plaintiff claims she was

16  made to work overtime -- is uniquely within Plaintiff's possession.

17         The Court considers $5,767.69, or 1 hour a week of overtime, to be appropriately

18  considered toward the amount in controversy for the second cause of action.

19                          **2.    "Subsequent" Violations**

20         Plaintiff alleges that Defendant failed to provide accurate itemized wage statements in

21  violation of section 226 of the California Labor Code.  Complaint ¶¶ 82-85.  Plaintiff states in her

22  complaint that she may elect to recover $50 for the initial pay period in which the violation

23  occurred, and $100 for each "subsequent" violation.  Id. ¶ 85.  She also alleges that Defendant

24  committed ten different statutory violations to which PAGA penalties apply.  Id. ¶¶ 94-98.  As to

25  those violations, enhanced penalties for "subsequent" violations are also available, although

26  Plaintiff does not specifically state in her complaint that she is seeking them.

27         The word "subsequent" has a specific meaning under the California Labor Code.  "Until

28  the employer has been notified that it is violating a Labor Code provision . . . the employer cannot

1    be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to

2    penalties." <u>Amaral v. Cintas Corp. No. 2</u>, 163 Cal. App. 4th 1157, 1209 (2008).  "However, after

3    the employer has learned its conduct violates the Labor Code, the employer is on notice that any

4    future violations will be punished just the same as violations that are willful or intentional—i.e.,

5    they will be punished at twice the rate of penalties that could have been imposed or that were

6    imposed for the initial violation."  <u>Id.</u>

7            Defendant proposes to calculate the amount in controversy as though all alleged Section

8    226 and PAGA violations after the first pay period will be penalized at the enhanced rate for

9    "subsequent" violations.  But this situation is not like the one presented by Plaintiff's overtime

10   claims, in which Plaintiff has chosen not to clarify the extent of her own allegations.  Here,

11   Plaintiff alleges (and provides a letter evidencing) that she informed Defendant in writing by mail

12   on September 24, 2013 that its actions violated the Labor Code.  <u>Id.</u> ¶ 97; <u>see also</u> Exhibit 1 to

13   Complaint.  There are no other factual allegations in the complaint suggesting that Defendant

14   knew its actions violated the Labor Code before that date.  At the hearing, Plaintiff's counsel

15   stated specifically that Plaintiff "disclaims" her right to recover the enhanced penalties for any pay

16   periods that occurred before the letter was sent.  As Plaintiff explains in paragraph 85 of her

17   complaint, she seeks only to reserve the right to claim possible "subsequent" penalties for any

18   *future*, continued violations of the Labor Code which occurred after the letter was sent, and while

19   this litigation is ongoing.  For purposes of considering remand, the court considers "the amount in

20   controversy at the time of removal."  <u>Singer v. State Farm Mut. Auto. Ins. Co.</u>, 116 F.3d 373, 377

21   (9th Cir. 1997) (<u>quoting</u> <u>Allen v. R & H Oil & Gas Co.</u>, 63 F.3d 1326, 1335-36 (5th Cir. 1995)).

22           Therefore, the court calculates the amount in controversy for these claims on the basis of

23   the initial, rather than "subsequent" rate.  The Court considers only $1,750 to be in controversy for

24   the § 226 claim, and $12,700 to be in controversy for the PAGA claims.

25           **C.      Reduction of PAGA penalties**

26           In a PAGA suit, "[i]f the representative plaintiff prevails, the aggrieved employees are

27   statutorily entitled to 25% of the civil penalties recovered while the LWDA [Labor & Workforce

28   Development Agency] is entitled to 75%."  <u>Urbino</u>, 726 F.3d at 1121 (<u>citing</u> Cal. Lab. Code

United States District Court
Northern District of California

§ 2699(i)).  Plaintiff argues that, for this reason, the amount in controversy for her PAGA claims should be reduced to 25% of the total to reflect only the portion of the penalties Plaintiff herself would receive.

"The traditional rule is that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement."  Urbino, 726 F.3d at 1122 (citing Troy Bank v. G.A. Whitehead & Co., 222 U.S. 39, 40 (1911)).  Congress created a specific exception to this rule in CAFA.  See Standard Fire Ins. Co. v. Knowles, __ U.S. __, 133 S. Ct. 1345, 1348 (2013) (CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of . . . [the] proposed class and determine whether the resulting sum exceeds $5 million").  But in a diversity action not subject to CAFA, the traditional "anti-aggregation" rule applies.  If a court is presented with a case involving "multiple plaintiffs," the court must determine whether those multiple plaintiffs have "'united to enforce a single title or right in which they have a common and undivided interest,' . . . and look to whether 'the claims are derived from rights that they hold in group status.'"  Urbino, 726 F.3d at 1122 (quoting Snyder v. Harris, 394 U.S. 332, 335 (1969) and Eagle v. Am. Tel. & Tel. Co., 769 F.2d 541, 546 (9th Cir. 1985)).  Unless the court concludes that these criteria have been met, the multiple plaintiffs' claims are disaggregated to calculate the amount in controversy.

Federal courts have had some difficulty determining how a PAGA suit fits within this typology.  See Hernandez v. Towne Park, Case No. CV 12–02972 MMM (JCGx), 2012 WL 2373372, at * 16 (C.D.Cal. June 22, 2012) (describing split and listing cases).  There are at least two ways in which a PAGA suit could be viewed as involving "multiple plaintiffs."  First, in a PAGA suit, a representative plaintiff brings claims not just to vindicate the Labor Code violations that directly affect her but also to vindicate the rights of other similarly situated workers.  Second, in a PAGA suit, 75% of the penalties are paid to the State of California's LWDA, and only 25% are distributed to the aggrieved employees.

In Urbino, the Ninth Circuit issued an opinion addressing the amount in controversy in a PAGA suit, and concluded in pertinent part:

Aggrieved employees have a host of claims available to them—e.g., wage and hour, discrimination, interference with pension and health coverage—to vindicate their employers' breaches of California's Labor Code. But all of these rights are held individually. Each employee suffers a unique injury—an injury that can be redressed without the involvement of other employees. Troy Bank, 222 U.S. at 41, 32 S.Ct. 9 (explaining that an interest is common and undivided when "neither [party] can enforce [the claim] in the absence of the other"). Defendants' obligation to them is not "as a group," but as "individuals severally." Gibson, 261 F.3d at 944 (quotation omitted). Thus, diversity jurisdiction does not lie because their claims cannot be aggregated.

Defendants contend, however, that the interest Urbino asserts is not his individual interest but rather the state's collective interest in enforcing its labor laws through PAGA. See, e.g., Arias, 95 Cal.Rptr.3d 588, 209 P.3d at 934; Amalgamated Transit Union, Local 1756, AFL–CIO v. Super. Ct., 46 Cal.4th 993, 95 Cal.Rptr.3d 605, 209 P.3d 937, 943 (2009). Accordingly, they argue this is effectively a "case[ ] in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant," Snyder, 394 U.S. at 335, 89 S.Ct. 1053, and that those claims can be combined to satisfy the minimum amount in controversy requirement of the diversity statute, id. To the extent Plaintiff can—and does—assert anything but his individual interest, however, we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirements of federal diversity jurisdiction. The state, as the real party in interest, is not a "citizen" for diversity purposes. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) (courts "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."); Mo., Kan. & Tex. Ry. Co. v. Hickman, 183 U.S. 53, 59, 22 S.Ct. 18, 46 L.Ed. 78 (1901); see also Moor v. Cnty. of Alameda, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (explaining that "a State is not a 'citizen' for purposes of the diversity jurisdiction").

Urbino, 726 F.3d at 1122-23.  The question is whether the Ninth Circuit was addressing only the issue of whether John Urbino's claims must be aggregated with his fellow multiple workers, or whether the court was also addressing whether that the portion of the penalties John Urbino would personally receive should be aggregated with the portion that would be distributed to the LWDA. Plaintiff reads Urbino to have addressed both issues.  This court reads it only as authority on the first.

At least two district courts in non-CAFA diversity actions have read the second Urbino

paragraph cited above as addressing the issue of whether the State of California's interest in a PAGA suit must be disaggregated from the interest of the employees. Those courts have concluded that, after Urbino, only 25% of the employees' PAGA recovery counts towards the jurisdictional minimum. Willis v. Xerox Bus. Servs., LLC, No. 1:13-cv-01353-LJO-JLT, 2013 WL 6053831, at *8 (E.D. Cal. Nov. 14, 2013); Pagel v. Dairy Farmers of Am., Inc., __ F.Supp. 2d__, No. 13-cv-2382-SVW-VBKX, 2013 WL 6501707, at *2 (C.D. Cal. Dec. 11, 2013) (reading Urbino to have "resolved this disagreement" in non-CAFA diversity suits, but then limiting Urbino's reach to non-CAFA suits). While that is an understandable conclusion, this court does not read Urbino the same way.

To begin with, Urbino nowhere explicitly discussed the argument that the amount in controversy attributable to a representative plaintiff in a PAGA suit must be reduced by 75%. That question was not before the court. The Urbino court described the question in front of it as "whether the penalties recoverable on behalf of *all aggrieved employees* may be considered in their totality to clear the jurisdictional hurdle." 726 F.3d at 1122 (emphasis added). Urbino concluded that they could not, because "[e]ach employee suffers a unique injury." Id.

Once the Urbino court concluded that representative plaintiff John Urbino's claims must be calculated separately from the claims pertaining to his fellow aggrieved employees, reducing "his" amount in controversy further by 75% would not have changed the outcome. The penalties attributable to Urbino's claims only totaled $11,602.40, well short of the jurisdictional minimum even before any further reduction. 726 F.3d at 1121.[5] On the other side of the equation, the total penalties were $9,409,550. Id. So if the Urbino court had held that all employees' claims should be aggregated, even 25% of this total would have satisfied the jurisdictional minimum. The question of whether John Urbino's claims were aggregated with his fellow aggrieved employees was entirely dispositive of the jurisdictional issue.

Moreover, not only did the Urbino court not address the same issue presented here, but that

---

[5] That $11,602.40 figure reflects the full amount of penalties attributable to John Urbino's claims. It is notable that the Ninth Circuit did not list the amount attributable to him as $2,900.60, as it would have if it viewed his claims as subject to a further 75% markdown.

United States District Court
Northern District of California

issue was not even before the court.  The defendant in Urbino did not argue that the State of California asserted 75% of the interest in Urbino's claims.   It argued that the State of California asserted *100%* of the interest in all employees' claims: "the interest asserted in a PAGA suit is the *undivided interest of the LWDA* to enforce California labor laws and recover civil penalties for violations of those laws," and therefore "the amount in controversy is the *full measure* of civil penalties sought--not some subset of those penalties attributable to alleged violations involving a single employee."  Urbino, Third Brief on Cross-Appeal of Defendants-Counter-Plaintiffs-Appellants/Cross-Appellees, 2012 WL 3781500 (C.A.9), at * 11 (emphases added); see also id. at *29-44.

In assessing the defendant's argument that a plaintiff asserts "not his individual interest but rather the state's collective interest in enforcing its labor laws," Urbino allowed only that "*to the extent Plaintiff can—and does—assert anything but his individual interest*, however, we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirements of federal diversity jurisdiction," since "[t]he state, as the real party in interest, is not a 'citizen' for diversity purposes."  726 F.3d at 1122-23 (emphasis added).  Urbino did not take a clear position on *whether* the representative plaintiff in a PAGA action "can–and does–assert anything but his individual interest."  The better reading of this passage is that the Ninth Circuit was indulging, for the sake of argument, the defendant's contention that John Urbino was effectively a representative of the State of California, and noting that even if this were so, diversity jurisdiction would be lacking for a different reason and so remand would still be required.

For the foregoing reasons, this court does not read Urbino to hold that individual employees' PAGA claims must be reduced by 75% for purposes of calculating the amount in controversy.  And for the following reasons, the court also does not understand Urbino's rationale to require that result.

It is possible, of course, that the Ninth Circuit might later determine that the portion of penalties paid to a worker should be disaggregated from the portion paid to the LWDA, applying a logic similar to the one used by Urbino to determine that the portion of penalties attributable to other employees must not be aggregated with the penalties attributable to the representative

1    plaintiff.  Urbino does partially undermine one rationale that some pre-Urbino courts used to

2    explain why they did not reduce the requisite amount in controversy by 75%.  District courts who

3    combined the LWDA's share of the recovery with the employees' share had "likened PAGA

4    claims to derivative shareholder suits, in which a shareholder has no individual rights to recovery

5    but rather seeks recovery on behalf of the corporation."  Quintana v. Claire's Stores, Inc., No. 13-

6    cv-0368-PSG, 2013 WL 1736671, at *7 (N.D. Cal. Apr. 22, 2013) (citing cases)).[6]  Those courts

7    reasoned that since "the interest in collecting civil penalties for violations belongs to the LWDA,"

8    the employee only "steps in to the LWDA's shoes to prosecute the action," and should be viewed

9    as combining his or her interest with that of the state.  Id.  Urbino's analysis of this issue, although

10   brief, appeared to reject the proposition that PAGA suits are fundamentally law enforcement

11   actions vindicating the interests of the state.  Compare Urbino, 726 F.3d at 1122-23 with id. at

12   1123-24 (Thomas, J., dissenting) and Urbino, 882 F.Supp.2d at 1162-64 (district court holding

13   reversed by the Ninth Circuit).

14          But it does not follow from this that the State of California and the employees must *split*

15   the claims.  An equally plausible inference from Urbino is that the Ninth Circuit rejected the

16   proposition that the State of California has *any interest at all* in a PAGA suit for purposes of

17   considering the amount in controversy.  The State of California, after all, is not actually a party to

18   the case.  True, "a federal court must disregard nominal or formal parties and rest jurisdiction only

19   upon the citizenship of real parties to the controversy."  Navarro Sav. Ass'n v. Lee, 446 U.S. 458,

20   461 (1980).  And courts sometimes view the actual parties to the case as effectively representing

21   the interest of a nonparty, such as when shareholders are effectively asserting "an injury to the

22   corporation and only an indirect injury to the shareholders."  Eagle v. Am. Tel. & Tel. Co., 769

23   F.2d 541, 547 (9th Cir. 1985).  But Urbino specifically distinguished Eagle, and in doing so "cast

24   doubt upon the notion that PAGA claims represent 'the state's collective interest in enforcing its

25   labor laws through PAGA.'"  Halliwell v. A-T Solutions, __ F.Supp.2d __, No. 13-cv-2014-H

26

27   _____

28   [6] Quintana, too, was a CAFA case, but its rationale and its analysis of other cases remains applicable.

United States District Court
Northern District of California

17

1    KDS, 2013 WL 6086156, at *4 (S.D. Cal. Nov. 7, 2013) (quoting Urbino, 726 F.3d at 1122).[7]

2        The other possibility Urbino considered was that PAGA claims should be viewed as State

3    property.  But, again, the possibility Urbino considered was that the *entirety* of a PAGA claim

4    belonged to the state, not the possibility that 75% of the claim does.  Urbino's analysis was all-or-

5    nothing; either a PAGA suit belongs to individual workers or it belongs entirely to the state.

6    Given the procedural posture of the case, Urbino did not decide the question because either result

7    would require remand.

8        However, even assuming that the State of California does not own the entirety of the

9    claims, but still remains part of the amount in controversy calculation, the question of whether

10   employees share their claims with the LWDA is importantly different than the question of whether

11   employees share their claims with each other.  "[T]he aggregation of employees' individual rights

12   does not compel their aggregation with the rights of a state agency, the LWDA."  Hernandez, 2012

13   WL 2373372, at *16.  By the same token, the *dis*-aggregation of employees' individual claims

14   does not necessarily compel their *dis*-aggregation from the rights of the state agency.

15       Urbino concluded that the workers' rights in a PAGA suit "are held individually," because

16   "[e]ach employee suffers a unique injury."  726 F.3d at 1122.  This is a reasonable way to

17   characterize the different employees' claims *vis-à-vis* each other, but it does not apply to the

18   relationship between the employees and the LWDA.  The Labor Code violations Plaintiff Patel

19   allegedly suffered are not unique from the ones the LWDA might seek to vindicate; both "claims"

20   have as their source the exact same injuries.

21       Applying Gibson v. Chrysler Corp., 261 F.3d 927, 944 (9th Cir. 2001), holding modified

22   post-CAFA by Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005), Urbino also

23

---

24   [7] Halliwell characterization of Urbino is accurate, although it applied the analysis to a different
     context.  Halliwell was considering whether PAGA claims were sufficiently similar to a class
25   actions to require the plaintiff to fulfill Rule 23 in federal court.  On that point, Halliwell's
     conclusion was undermined by the Ninth Circuit's later finding that "[a] PAGA action is at heart a
26   civil enforcement action filed on behalf of and for the benefit of the state, not a claim for class
     relief."  Baumann v. Chase Inv. Servs. Corp., 747 F.3d 1117, 1124 (9th Cir. 2014).  It does not fall
27   to this court to reconcile any tension between Baumann's view of PAGA and Urbino's.  On the
     issue of determining the amount in controversy, Urbino is the controlling authority.
28

United States District Court
Northern District of California

concluded that the employees' claims should be disaggregated because "Defendants' obligation to them is not 'as a group,' but as 'individuals severally.'" 726 F.3d at 1122.  Here, Defendant Nike owes an obligation to Plaintiff Patel and to the LWDA to obey the state Labor Code, but it owes that obligation to both entities as a plurality.  A single Labor Code violation violates Defendant's obligations to both entities at the same time and in the same way.

In Gibson, the Ninth Circuit considered "paradigm aggregation cases" to be those that "involv[e] 'a single indivisible *res*' and concern[] 'matters that cannot be adjudicated without implicating the rights of everyone involved with the *res*.'" 261 F.3d at 944.  Individual claims, on the other hand, "are each cognizable, calculable, and correctable individually." Id. at 945.  If this court adjudicates Patel's PAGA claims, any "rights" the LWDA has in those claims will either be vindicated or extinguished.  The adjudication of Patel's claims will implicate both Patel's rights and the LWDA's.  Once the LWDA has been informed of the potential Labor Code violations and declined to prosecute them, Patel's claims are not "cognizable" as different claims that the LWDA's.

One factor considered by Urbino appears to push in the other direction.  When claims are aggregated, it is usually the case that "neither [party] can enforce [the claim] in the absence of the other." Urbino, 726 F.3d at 1122 (citing Troy Bank) (alterations in the original).  PAGA "permits either the LWDA or the aggrieved employees to act independently to enforce the Labor Code." Hernandez, 2012 WL 2373372, at *6.  But even if this one factor suggests that the rights might be individualized, most of the relevant factors weigh in favor of considering any of the LWDA's claims in a PAGA suit to be held commonly and indivisibly with the individual workers.  In a PAGA suit, the individual employee and the LWDA are not joining together to assert different claims, they are "unit[ing] to enforce a single title or right in which they have a common and undivided interest." Troy Bank, 394 U.S. at 335.

After Urbino, it is unclear whether the State of California has any interest in PAGA suits for the purposes of calculating the amount in controversy.  But if it does hold any such interest, the interest is held in common with the individual workers.  For these reasons, the entire amount of PAGA penalties attributable to Patel's claims count towards the amount in controversy.

United States District Court
Northern District of California

### D.    Attorney's Fees

Before considering attorney's fees, the amount in controversy stands at **$65,644.89.**  The only remaining question is whether Defendant has met its burden to establish that attorney's fees of at least $9,355.11 can also be considered in controversy.

"The amount in controversy includes . . . attorney's fees, if authorized by statute or contract."  Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005).  Plaintiff's complaint does not specifically state that she is seeking any attorney's fees, and in fact her prayer states that "neither this prayer nor any other allegation or prayer in this Complaint is to be construed as a request, under any circumstance, that would result in a request for attorneys' fees under Cal. Lab. Code 218.5."  Complaint, at p. 40.  But whether or not the complaint itself requests an award of attorney's fees, Plaintiff may later seek them, and Plaintiff's counsel has not disclaimed his ability to recover them.  "Any employee who prevails in any [PAGA] action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab.Code § 2699(g).

In support of removal, Defendant "conservatively estimates that attorneys' fees through trial will exceed at minimum $39,500, using the lowest hourly rate for Plaintiffs counsel."  Opp. at 13 (citing Notice of Removal ¶ 47).  Defendant bases this estimate on two foundations.  First, Defendant produces a declaration by another attorney at Plaintiff's counsel's law firm in support of a request for attorney's fees in another case.  Exh. D to Notice of Removal.  That declaration indicates that attorneys at the firm bills at between $395 and $775 per hour.  Id.  Second, to provide the appropriate multiplier for the $395 hourly rate, Defendant relies on the Lippold court's statement that "attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case" through trial.  2010 WL 1526441, at *4.

In response, Plaintiff makes two arguments.  First, she notes that there is a circuit split, and a split of authority within the Ninth Circuit, over "whether the courts may consider only fees incurred as of the time of removal, or also a reasonable estimate of future attorneys' fees to be incurred in the action, when determining the amount in controversy."  Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3725 (4th ed.).  She urges this court to adopt the former view.  This argument is unavailing on its own.  Plaintiff's counsel has declared that attorneys' fees and costs

1   accrued through removal amount to $9,641.25.  Bhowmik Declaration ¶ 2.  This would bring

2   Plaintiff $286.14 over the jurisdictional minimum.

3          But Plaintiff's second argument is well-founded.  As the undersigned recently concluded in

4   another PAGA removal action, only the portion of attorney's fees attributable to Patel's claims

5   count towards the amount in controversy.  See Garrett v. Bank of Am., N.A., No. 13-cv-05263-

6   JST, 2014 WL 1648759, at *8 (N.D. Cal. Apr. 24, 2014).  "When the rule is that claims are not

7   aggregated (as the rule was . . . for class actions under Zahn and as it is now for PAGA actions

8   under Urbino), it 'would seriously undermine' the [anti-aggregation] rule to allow attorney's fees

9   to be allocated solely to a named plaintiff in determining the amount in controversy."  Id. (quoting

10  Goldberg v. CPC Int'l, Inc., 678 F.2d 1365, 1366 (9th Cir. 1982)); accord Davenport v. Wendy's

11  Co., No. 2:13-CV-02159-GEB, 2013 WL 6859009, at *2 (E.D. Cal. Dec. 24, 2013).

12         Therefore, even taking Defendant's estimate of $39,500 as the appropriate estimate of the

13  attorney's fees incurred in taking a PAGA lawsuit through trial, that amount in total is not

14  appropriately added to Patel's claims.  The amount must distributed *pro rata* to all aggrieved

15  employees Patel seeks to represent.

16         In her complaint, Plaintiff seeks to represent "all other individuals who are or previously

17  were employed by DEFENDANT as Assistant Store Managers in California and were classified as

18  exempt from overtime wages during the applicable statutory period."  Complaint ¶ 96.  If there are

19  even five such employees within the state of California, that would make Patel's share of the fees

20  only $7,900.  This would be insufficient to meet the $75,000 amount in controversy.  It seems

21  likely that many more than five employees fit within this category.  But in any case, the

22  evidentiary burden is on Defendant to prove otherwise, and Defendant has failed to produce

23  evidence necessary to meet its burden of showing that the amount in controversy attributable just

24  to Patel's claims meets the amount in controversy.  The representative plaintiffs are defined by

25  objective criteria based on information that is within Defendant's possession, and demonstrating

26  the number of employees who meet the criteria would not require Defendant to prove its own

27  liability.

28         Defendant has failed to demonstrate that at least $9,355.11 in attorney's fees are in

United States District Court
Northern District of California

1  controversy for Plaintiff Patel's claims.

2  **IV.   CONCLUSION**

3       For the foregoing reasons, Defendant has failed to meet its burden to demonstrate that the

4  amount in controversy necessary to establish federal diversity jurisdiction is established.  This

5  action is hereby REMANDED to Alameda Superior Court.

6       **IT IS SO ORDERED.**

7  Dated:  July 21, 2014

8  

9            JON S. TIGAR
        United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California